```
                    UNITED STATES DISTRICT COURT
                     DISTRICT OF MASSACHUSETTS
_____
                              )
CAYSE LLORENS,                )
                              )
           Plaintiff,         )
                              )
v.                            )
                              )    Civil Action
LEXSHARES, INC., DAVID ROSNER,)    No. 24-cv-12452-PBS
and FRANK VAN LINT,           )
                              )
           Defendants.        )
_____)
```

## MEMORANDUM AND ORDER

December 3, 2024

Saris, D.J.

## INTRODUCTION

Plaintiff Cayse Llorens, a Black male, is the former Chief Executive Officer ("CEO") of Defendant LexShares, Inc. ("LexShares"). Llorens's relationship with the board of directors of LexShares ("Board") soured throughout 2022, and the Board decided to replace him at the end of the year. Llorens resigned rather than be terminated. He then sued LexShares and Defendants David Rosner and Frank van Lint -- the chairman of the Board and a Board member, respectively -- alleging racial discrimination in violation of Massachusetts General Laws Chapter 151B ("Chapter 151B"). LexShares, Rosner, and van Lint (collectively, "Defendants") now move to dismiss Llorens's suit under Federal Rule of Civil Procedure 12(b)(6).

1

After hearing, the Court **ALLOWS** in part and **DENIES** in part Defendants' motion to dismiss (Dkt. 8).

## BACKGROUND

The complaint alleges the following facts, which the Court accepts as true at this stage. See Artuso v. Vertex Pharms., Inc., 637 F.3d 1, 5 (1st Cir. 2011).

Llorens graduated from business school in 2019 and founded a private equity firm. In 2020, the firm took a majority stake in LexShares, a litigation financing company. Llorens became the CEO of LexShares at the time of his firm's investment. He joined the Board as its only Black member as well. Llorens's employment contract with LexShares contained a Massachusetts choice-of-law provision. It also included a "Waiver of Statutory Limitations Periods" provision stating:

> Employee [Llorens] agrees that any claim against the Company [LexShares] relating to the employment relationship between the Company and Employee (including the termination of the employment relationship) must be brought against the Company within 180 days of the event giving rise to the claim, or within the applicable statutory limitations period (whichever period is shorter) . . . .

Dkt. 9-1 ¶ 24.

In February 2022, the Board established key performance indicators ("KPIs") for Llorens and the two White members of LexShares' executive team, President Jay Greenberg and Chief Investment Officer Max Volsky. The KPIs set metrics to measure job

performance, determine year-end bonuses, and set salaries for the following year. Llorens, Greenberg, and Volsky had the same salary for 2022, but Greenberg and Volsky had the opportunity to earn a larger bonus than Llorens.

Llorens had a contentious relationship with the Board during 2022. The Board did not allow him to bring a scribe to meetings after a thumb injury hampered his ability to type or write. Board members also cut him off during meetings and rejected his ideas without giving them adequate consideration. Nonetheless, Llorens had a successful tenure at LexShares, including growing earnings by around a third.

On November 18, 2022, Llorens attended a performance evaluation with Rosner and van Lint, two Board members. At the meeting, Llorens learned that the Board had changed the KPIs that it had previously set for him. Llorens received a negative performance review based on the new KPIs and did not earn a bonus for 2022. The Board did not, however, change the KPIs for Greenberg and Volsky. And even though Volsky had announced in September 2022 that he planned to leave LexShares in 2023, the Board gave Volsky a raise, several contract concessions, and possibly a bonus for 2022.

Two weeks after his performance evaluation, Llorens proposed amendments to his employment contract. Rosner and van Lint told Llorens that the Board would not consider any contract amendments

3

because he had not added value to the company. During the meeting, Rosner admitted that he had not read an email Llorens had sent detailing his accomplishments at LexShares.

On December 14, 2022, Rosner informed Llorens that the Board was looking for a replacement CEO. Llorens tendered his resignation the next day. His last day as CEO was January 13, 2023. LexShares replaced Llorens with a White man.

Llorens filed a charge of racial discrimination against Defendants with the Massachusetts Commission Against Discrimination ("MCAD") on September 11, 2023. He withdrew his charge in March 2024 and then filed suit five months later.

## LEGAL STANDARD

To survive a motion to dismiss, a complaint must allege "a plausible entitlement to relief." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 559 (2007). "While a complaint attacked by a Rule 12(b)(6) motion does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of a cause of action's elements will not do." Id. at 555 (cleaned up). This standard requires a court to "separate the complaint's factual allegations (which must be accepted as true) from its conclusory legal allegations (which need not be credited)." Kando v. R.I. State Bd. of Elections, 880 F.3d 53, 58 (1st Cir. 2018) (quoting Morales-Cruz v. Univ. of P.R.,

4

676 F.3d 220, 224 (1st Cir. 2012)). The court must then determine whether the factual allegations permit it "to draw the reasonable inference that the defendant is liable for the misconduct alleged." Germanowski v. Harris, 854 F.3d 68, 72 (1st Cir. 2017) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)).

In addition to the well-pleaded allegations in the complaint, a court evaluating a motion to dismiss may consider certain extrinsic documents, including those "the authenticity of which are not disputed by the parties" and "documents central to the plaintiff's claim." Newman v. Lehman Bros. Holdings Inc., 901 F.3d 19, 25 (1st Cir. 2018) (quoting Freeman v. Town of Hudson, 714 F.3d 29, 36 (1st Cir. 2013)). The parties agree that the Court may consider Llorens's employment contract and his MCAD filings in connection with the motion to dismiss.

## DISCUSSION

### I. Statute of Limitations

Defendants first argue that Llorens's claim is time-barred because he failed to file his MCAD charge and lawsuit within the 180-day limitations period set forth in his employment contract. An individual seeking to bring an employment discrimination claim under Chapter 151B normally must file a "charge[] with MCAD within 300 days of experiencing the adverse action alleged." Rae v. Woburn Pub. Schs., 113 F.4th 86, 99 (1st Cir. 2024); see Mass. Gen. Laws ch. 151B, § 5. After waiting at least 90 days for a response from

MCAD, he may then file suit in court. See Mass. Gen. Laws ch. 151B, § 9; Rae, 113 F.4th at 99. Any "Chapter 151B claim must be filed in court within three years of the adverse employment action." Rae, 113 F.4th at 99; see Mass. Gen. Laws ch. 151B, § 9. Llorens alleges that he suffered multiple adverse employment actions within 300 days of the filing of his MCAD charge on September 11, 2023, and within three years of the filing of this lawsuit. These actions include being told on November 18, 2022, that the Board had revised his KPIs, the resulting denial of a bonus, and the subsequent Board decision to replace him as CEO in mid-December 2022.

Defendants claim that Llorens's employment contract shortened these statutory deadlines to 180 days. In general, "Massachusetts law permits contractually shortened limitations periods so long as they are 'reasonable' and 'not contrary to other statutory provisions or to public policy.'" Machado v. System4 LLC, 28 N.E.3d 401, 414-15 (Mass. 2015) (quoting Creative Playthings Franchising, Corp. v. Reiser, 978 N.E.2d 765, 767 (Mass. 2012)). The Massachusetts Supreme Judicial Court ("SJC") has held, however, that "an employment contract containing an agreement by the employee to limit or waive any of the rights or remedies conferred by [Chapter] 151B is enforceable only if such an agreement is stated in clear and unmistakable terms." Warfield v. Beth Israel Deaconess Med. Ctr., Inc., 910 N.E.2d 317, 325 (Mass. 2009); see

6

id. at 326 ("[A] private agreement that purports to waive or limit -- whether in an arbitration clause or on some other contract provision -- the employee's otherwise available right to seek redress for employment discrimination through the remedial paths set out in [Chapter] 151B, must reflect that intent in unambiguous terms."). A contractually shortened limitations period to bring a Chapter 151B claim is an agreement to limit the employee's rights under the statute. Thus, the 180-day limitations period in Llorens's employment contract is enforceable with regard to his Chapter 151B claim only if the shortened period clearly and unmistakably applies to such claims.[1]

To clearly and unmistakably apply to Chapter 151B claims, a contract must, at minimum, state that the relevant waiver or limitation applies to discrimination claims. Compare Joulé, Inc. v. Simmons, 944 N.E.2d 143, 152 n.15 (Mass. 2011) (holding that an arbitration clause clearly and unmistakably applied to Chapter 151B claims where it covered "disputes between [the employee] and [the employer] . . . relating to [her] employment and/or termination of [her] employment (which includes without

---

[1] Defendants assert that "Massachusetts courts consistently enforce mutual agreements to shorten" the 300-day deadline to file an MCAD complaint in connection with a Chapter 151B claim. Dkt. 9 at 7. The only case they cite for this proposition, though, is one from this district enforcing a contractually shortened limitations period with regard to a federal employment discrimination claim rather than a Chapter 151B claim. See Morales v. Fed. Express Corp., 610 F. Supp. 3d 317, 323-25 (D. Mass. 2022).

7

limitation, claims of discrimination, harassment, hostile work environment, retaliation, or other wrongful termination claims" (emphasis omitted)), with Warfield, 910 N.E.2d at 328 (reaching the opposite conclusion where "there [was] nothing in the arbitration clause or elsewhere in the agreement stating that any claims of employment discrimination by [the plaintiff were] subject to arbitration"). A contractual provision does not clearly and unmistakably apply to Chapter 151B claims if it merely references disputes relating to "employment" or the "termination of employment" without any further specificity. See Warfield, 910 N.E.2d at 324 n.11; see also Minkina v. Frankl, 16 N.E.3d 492, 499 (Mass. App. Ct. 2014) (explaining that Warfield "directly overruled [the Massachusetts Appeals Court's] rejection of the requirement of a specific reference to discrimination claims").

The language in Llorens's employment contract does not satisfy this standard. The contract imposes a 180-day limitations period for "any claim against the Company [LexShares] relating to the employment relationship between the Company and Employee [Llorens] (including the termination of the employment relationship)." Dkt. 9-1 ¶ 24. This provision does not specifically mention claims of discrimination and, thus, does not clearly and unmistakably apply to Chapter 151B claims. Llorens's Chapter 151B claim is not time-barred.

## II. Chapter 151B Claim Against LexShares

Defendants next argue that Llorens has not plausibly alleged a claim of racial discrimination against LexShares under Chapter 151B. A discrimination claim under Chapter 151B has "four elements: membership in a protected class, harm, discriminatory animus, and causation." Verdrager v. Mintz, Levin, Cohn, Ferris, Glovsky & Popeo, P.C., 50 N.E.3d 778, 793 (Mass. 2016) (quoting Lipchitz v. Raytheon Co., 751 N.E.2d 360, 368 (Mass. 2001)). To establish a prima facie case of discrimination, an employee must show "that '(1) he is a member of a class protected by [Chapter] 151B; (2) he performed his job at an acceptable level; [and] (3) he was terminated' or otherwise subjected to an adverse employment action." Id. (second alteration in original) (quoting Blare v. Husky Injection Molding Sys. Bos., Inc., 646 N.E.2d 111, 115 (Mass. 1995)); see Diaz v. City of Somerville, 59 F.4th 24, 28-29 (1st Cir. 2023). "It is not necessary to plead facts sufficient to establish a prima facie case at the pleading stage," but "the elements of the prima facie case . . . are part of the background against which a plausibility determination should be made." Rodríguez-Reyes v. Molina-Rodríguez, 711 F.3d 49, 54 (1st Cir. 2013); see Germanowski, 854 F.3d at 72.

Llorens has plausibly alleged the elements of a prima facie case of discrimination. He pleads that he is Black and that he was successful during his tenure at LexShares. His complaint also

9

describes multiple adverse employment actions that he allegedly suffered. See Yee v. Mass. State Police, 121 N.E.3d 155, 161-62 (Mass. 2019) (explaining that adverse employment actions include "effects on working terms, conditions, or privileges that are . . . substantial enough to have materially disadvantaged an employee" (first quoting King v. City of Boston, 883 N.E.2d 316, 323 (Mass. App. Ct. 2008); then quoting Psy-Ed Corp. v. Klein, 947 N.E.2d 520, 530 (Mass. 2011))). Defendants do not develop the argument that the belated change to Llorens's KPIs -- and the accompanying negative performance review and denial of a year-end bonus -- did not constitute an adverse employment action. See Boutin v. Home Depot USA, Inc., 490 F. Supp. 2d 98, 107 (D. Mass. 2007) (listing an action "that affects ' . . . bonuses'" as an example of an adverse employment action (quoting Swallow v. Fetzer Vineyards, 46 F. App'x 636, 646 (1st Cir. 2002))). And although Defendants contend that Llorens's resignation prevents him from advancing a termination-related claim, the complaint supports a reasonable inference that, for all intents and purposes, LexShares fired Llorens when Rosner informed him that the Board was seeking a replacement CEO. See Edwards v. Commonwealth, 174 N.E.3d 1153, 1167 (Mass. 2021) (holding that a plaintiff showed an adverse employment action where the record indicated that she "was fired and that her letter of resignation was merely an attempt to save face professionally").

10

Moreover, the complaint supports a plausible inference that these adverse employment actions resulted from racial discrimination. Llorens alleges that the Board did not similarly change the KPIs of the two White men on the executive team, Volsky and Greenberg. He also alleges that while the Board refused to entertain any amendments to his contract, it gave Volsky a raise and various contract concessions even after Volsky announced that he would be leaving the company. These comparator allegations suffice at this stage to render plausible the claim that LexShares changed his KPIs, gave him a negative performance review, denied him a bonus, and then terminated him as a result of discriminatory animus. See, e.g., Dexter v. Dealogic, LLC, 390 F. Supp. 3d 233, 241 (D. Mass. 2019) (denying a motion to dismiss an employment discrimination claim based on the plaintiff's plausible comparator allegations). Defendants protest that Llorens served in a unique position as CEO and, thus, that Volsky and Greenberg are not fair comparators, but the Court cannot resolve this fact-intensive argument on a motion to dismiss. See Trs. of Health & Hosps. of City of Bos. v. Mass. Comm'n Against Discrimination, 871 N.E.2d 444, 451 (Mass. 2007) (explaining that the test for comparator evidence "is whether a prudent person, looking objectively at the incidents, would think them roughly equivalent and the protagonists similarly situated" (quoting Dartmouth Rev. v. Dartmouth Coll., 889 F.2d 13, 19 (1st Cir. 1989))).

Defendants argue that Llorens has failed to state a claim of racial discrimination because he does not allege that LexShares replaced him as CEO with a similarly qualified person. While the SJC has previously included this element in its prima facie case standard, see McKenzie v. Brigham & Women's Hosp., 541 N.E.2d 325, 327 (Mass. 1989), it has not done so in more recent decisions. See Verdrager, 50 N.E.3d at 793; Bulwer v. Mount Auburn Hosp., 46 N.E.3d 24, 32-33 (Mass. 2016). Regardless, the absence of an allegation that Llorens was similarly qualified to the White CEO who replaced him does not undermine the plausible inference of racial discrimination that arises from LexShares' different treatment of the White executives.

The Court therefore denies the motion to dismiss with regard to LexShares.

### III. Chapter 151B Claim Against Rosner and van Lint

Finally, Defendants contend that Llorens has failed to adequately allege that Rosner and van Lint violated Chapter 151B. Certain provisions of Chapter 151B allow for liability against individuals in addition to employers. See Verdrager, 50 N.E.3d at 793; Thomas v. EDI Specialists, Inc., 773 N.E.2d 415, 417 (Mass. 2002). In particular,

> individuals, whether supervisors, fellow employees, or third parties, also may be held liable by provisions that forbid 'any person . . . to . . . interfere with another person in the exercise or enjoyment of any right granted or protected by this chapter,' [Mass. Gen. Laws

12

> ch. 151B, § 4(4A)], and that prohibit 'any person, whether an employer or an employee or not, to aid [or] abet . . . the doing of any of the acts forbidden under this chapter.' [Mass. Gen. Laws ch. 151B, § 4(5)].

Verdrager, 50 N.E.3d at 793 (first, second, and fourth alterations in original).

An individual violates § 4(4A) if he "interfere[s] with [the plaintiff's] rights in deliberate disregard of those rights,' which requires a showing of 'an intent to discriminate.'" Cocuzzo v. Trader Joe's E. Inc., __ F.4th __, __ (1st Cir. 2024) [2024 WL 4799281, at *9] (quoting Coogan v. FMR, LLC, No. 15-cv-13148, 2018 WL 4405614, at *10 (D. Mass. Sept. 17, 2018)); cf. McLaughlin v. City of Lowell, 992 N.E.2d 1036, 1058 n.34 (Mass. App. Ct. 2013) (explaining that "§ 4(4A) is best understood as a device through which an individual falling outside the scope of the definition of 'employer' may otherwise be liable for conduct which the antidiscrimination statute aims to prevent"). An aiding and abetting claim under § 4(5) requires proof "(1) that the defendant committed 'a wholly individual and distinct wrong . . . separate and distinct from the claim in main'; (2) 'that the aider or abetter shared an intent to discriminate not unlike that of the alleged principal offender'; and (3) that 'the aider or abetter knew of his or her supporting role in an enterprise designed to deprive [the plaintiff] of a right guaranteed him or her under [Chapter] 151B.'" Lopez v. Commonwealth, 978 N.E.2d 67, 82 (Mass.

13

2012) (first and second alterations in original) (quoting Harmon v. Malden Hosp., 19 Mass. Discrimination L. Rep. 157, 158 (1997)).

Llorens does not specify which provision of Chapter 151B he alleges Rosner and van Lint violated, but his complaint does not state a plausible claim under either theory of individual liability. Most of the allegations in the complaint regard decisions made by the Board as a whole. As to the individual defendants specifically, the complaint alleges that Rosner admitted on multiple occasions to disregarding Llorens's emails and proposals; that Rosner and van Lint informed Llorens of various Board decisions and delivered his performance evaluation; that Rosner excluded Llorens from compensations conversations; and that Rosner and van Lint threatened to cancel a meeting with a prospective buyer because Llorens planned to bring a scribe. These allegations do not support a plausible inference that Rosner and van Lint personally acted with intent to discriminate on the basis of race, which is a necessary element for liability under either § 4(4A) or § 4(5).

The Court therefore allows the motion to dismiss with regard to Rosner and van Lint. This decision is without prejudice to the filing of an amended complaint with additional factual allegations to establish a plausible claim against Rosner and van Lint under Chapter 151B.

Case 1:24-cv-12452-PBS    Document 25    Filed 12/03/24    Page 15 of 15

15

## **ORDER**

Accordingly, Defendants' motion to dismiss (Dkt. 8) is **ALLOWED** as to Defendants David Rosner and Frank van Lint without prejudice to filing an amended complaint within 30 days. The motion to dismiss is otherwise **DENIED**.

SO ORDERED.

/s/ PATTI B. SARIS
Hon. Patti B. Saris
United States District Judge
